Peters vs. Bell.

---

## No. 12,924.

## S. D. PETERS VS. A. C. BELL, CITY ENGINEER.

### SYLLABUS.

#### ON MOTION TO DISMISS.

Where the salary of the office of one who claims that he has been illegally discharged, if as he claims, he *has* been illegally discharged, is more than the sum required to give this court jurisdiction, an appeal will lie. The amount of the claim for salary may be shown by affidavit in the Supreme Court.

51 1641
52 1647
51 1621
d119 883
e120 640

#### ON THE MERITS.

1. The removed officer held under appointment from the officer in charge of a department.
He was appointed first by the City Council under the Charter of 1882, and reappointed under the Charter of 1896, in September, 1896. The reappointment by the city engineer was made under an ordinance of the City Council authorizing defendant to appoint plaintiff.

2. He qualified under the last appointment prior to the classification of offices and the adoption of the civil service rules. He was not examined by the civil service board, and his case does not come within the rules of the board.

3. The ordinance giving to the engineer the power to appoint his deputies was not *ultra vires*. Under the charter of 1882, the City Council had the power to regulate the city engineer's office; under the existing charter, the power was expressly delegated to the city engineer, under conditions which could not be observed, but still leaving the power to appoint in that officer.

4. The power of appointment carries with it the power of removal, where the appointment is not made for a special term.
In matter of an injunction to reinstate the officer, the right sought not being

obvious, the court *a qua* was vested with discretion needful to grant the writ.

The issue of title is one primarily to be settled in *quo warranto*, intrusion into office, or other similar proceedings.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*James Wilkinson* and *A. J. Peters* for the Plaintiff and Appellant.

*Samuel L. Gilmore,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney, for the Defendant and Appellee.

Submitted on motion to dismiss November 7, 1898.

Opinion on motion to dismiss handed down November 21, 1898.

Argued and submitted March 23, 1899.

Opinion handed down on the merits April 3, 1899.

Rehearing refused June 26, 1899.

ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

BREAUX, J.    Plaintiff alleges that he was appointed assistant engineer of the city of New Orleans on the 5th of May, 1896, under the authority of the City Council, and was, when unlawfully discharged, performing the duties of his office.

That having been regularly appointed, under the terms of the city charter, he holds his office during good behavior, and can only be discharged for cause by the City Council and not by the city engineer, who has undertaken to discharge him.

He avers in his petition, that the sum in controversy exceeds two thousand dollars, and he prays for an injunction, prohibiting him from obstructing him in carrying out the duties of his office, except so far as it may be needful to give necessary orders to perform the work of his office.

The district judge refused to grant an injunction.    Thereupon plaintiff filed a supplemental and amended petition for a judgment as prayed for in his original petition recognizing him as entitled to the office he claims, with the emoluments, at the rate of one hundred dollars per month from June 15, 1897, to the time when he shall have been reinstated.

There is an affidavit filed in this court setting forth his interest as being in amount within the jurisdiction of this court.

The judge of the court *a qua* mantained the exception, and dismissed plaintiff's suit.

Plaintiff prosecutes this appeal.

We have only to deal at this time with the jurisdiction of this court which comes up on defendant's motion to dismiss the appeal.

It may be that the amount involved is much less than two thousand dollars, and that on the merits it will be decided that plaintiff has no right of action. At this time, we would not feel justified in dismissing the appeal upon the assumption that he is not entitled to any amount (as defendant urges we should) or to be reinstated, and that his averments and affidavits were made in error. Some weight has always been given to affidavits setting forth that the judgment was rendered for an appealable amount, whenever the evidence did not, on the face of the papers, show that it was not correct and true.

Only as relates to jurisdiction, there is sufficient showing made to enable plaintiff to sustain his appeal and to obtain a hearing as to whether he is entitled to a reinstatement to the office he claims and to the salary of the office to the day of reinstatement. Goodrich vs. Newell, 43rd Ann., 373; and Sims vs. Walshe, 49th Ann., 781.

The motion to dismiss the appeal is denied.

## On the Merits.

This is a suit brought by plaintiff to be reinstated in the office of assistant city engineer, from which he was removed by an order of the city engineer.

Plaintiff applied for a writ of injunction to restrain defendant from discharging him. The judge *a quo* issued a rule *nisi* ordering the defendant to show cause why the injunction should not be issued. After a hearing of the parties concerned, the injunction was refused.

Thereupon, plaintiff filed a supplemental petition, making the city of New Orleans a party, and asking for judgment against the city for the salary he claimed. On an exception filed by the city attorney, the suit against the city was dismissed, and from the judgment of dismissal, no appeal was taken.

There is no dispute as relates to the following facts:

Plaintiff was appointed assistant city surveyor and engineer in

1896, prior to the repeal of the city charter of 1882, and he was re-appointed in 1896, under the existing city charter.

Defendant in his answer, alleged that the plaintiff was discharged by him from the position of assistant engineer on June 1st, 1897; the discharge to take effect June 15th, 1897. The plaintiff was notified on the first of the month of his discharge, to take effect as alleged.

With reference to plaintiff's appointment, it appears that "the city of New Orleans, by ordinance 12,316, passed on May 19th, 1896, established plaintiff's position as an assistant engineer of the city, at one hundred dollars per month, in the city engineer's office. Said plaintiff to be appointed in accordance with section 1 of said ordinance."

Plaintiff's name was sent to the City Council by the city engineer, Bell, as assistant engineer, and was duly confirmed by that body.

Sometime after, acting under Section 18 of Act No. 45 of 1896, the City Council reorganized the different departments, and acting under said ordinance, plaintiff was again appointed and confirmed. Defendant Bell notified the City Council of plaintiff's appointment, and requested the approval of the Council. The approval was given and the appointment confirmed.

Contradictorily with the City Engineer Bell, the case was tried on the merits and plaintiff's demand rejected.

From the judgment, plaintiff appeals.

## I.

At the outset we gave consideration to the issues arising on the merits; and issues regarding the injunction were not taken up at first for decision. They will be taken up after consideration of the merits of the case. This brings us at once to the question of defendant's right *vel non* to discharge the plaintiff.

Defendant, in the first place, urged that the right to appoint carried with it the right to discharge; that it is an essential power in the proper administration of the municipality applying to municipal officers who are, defendant contended, removable at will, by the one who made the appointment, without any necessity of assigning a cause.

Plaintiff controverts defendant's position, and insists, as we take it,

that if plaintiff was subject to discharge at pleasure, it was only at the pleasure of the Council, and not of the city engineer, to whom the power was not delegated.

We have noted that plaintiff was reappointed under the charter of 1896, and we think the right he claims must be tested under that charter; although, as relates to the naked question of discharge, whether considered under the charter of 1882 or the charter of 1896, we are convinced that there is somewhere a power of removal of an officer of the municipal corporation. It is one of the inherent powers, and "from the reason of things, from the nature of corporations and for the sake of order and of good government, the power is incidental." Dillon, Municipal Corporations, Sec. 240, 3rd Ed.

We have not sought to determine in whom the power of removal was vested under the charter of 1882; we think that plaintiff held his position under the charter of 1896.

The department in which plaintiff was employed is a separate and independent department, and its officers and employees are not subject to the control of any other department, nor are they to be removed by any one connected with it.

## II.

Plaintiff alleges that the City Council, and the City Council alone, had the power to suspend or remove him under the regulation of the board of civil service.

Plaintiff was appointed before that board had been organized.

The statute applies to the officers or employees "in the classified service who shall have been appointed under said rules." Statute 45 of 1896. Not the case here, as plaintiff had been appointed and confirmed when the rules were adopted. City of New Orleans vs. Board of Fire Commissioners, 50th Ann., 1000. It was decided in this case that the part of the law relating to "classified service" did not become operative prior to March 18th, 1897, a date subsequent to plaintiff's appointment. But the Act of 1896 (the city charter of New Orleans), in other respects, was in force from the date of its promulgation, and we have seen that the reappointment of plaintiff was made by defendant under the authority of that Act, which provides "there shall be appointed by the city engineer under and in accordance with the rules and regulations prescribed by the board of civil service commissioners not more than seven deputy surveyors, skilled in their profession." Section 35 of Act 45 of 1896.

### III.

There was a power of appointment delegated by the Act, we think,. which was independent, necessarily, from the board of civil service commissioners, which did not exist at the date of the appointment.

Moreover, under another section (18) of the statute, it was provided that "the Council shall organize the departments of comptroller, treasurer, commissioner of public works, commissioner of public buildings, city engineer and city attorney; regulate the number of clerks and other persons to be employed therein, and fix the salaries of such clerks and employees." The City Council chose to authorize the city engineer to make the appointment of the deputies in his office; and, under the ordinance, the city engineer appointed the plaintiff. Under the laws at the time in force, he alone was entrusted with the appointment.

Plaintiff was originally appointed by the city engineer. If he was not originally appointed and re-appointed by that officer, who had, under the power of the statute, the absolute right to appoint, he was not appointed at all.

But plaintiff's counsel insists, that under section 27 of the statute cited *supra,* the proper party to act was not the city engineer, but the mayor, in the exercise of his right of supervision.

The section in question grants to the mayor the right to appoint and remove "such officers as may be hereinafter designated." This applies to "officers and persons employed by the city." We are not inclined to think that it applies to assistants employed in any of the departments, who are employed by the chief of the department and not directly by the city through its mayor. The section, taken as a whole, refers to the duties of the mayor. We take it, that it was not the intention of the legislature that the mayor should concern himself about what each deputy or assistant ought to do in his subordinate capacity in any of the departments. This, we take it, under the terms of the statute, was left to the chief of each department to exercise properly, both as relates to his department and to those placed in his charge under the statute.

Another sentence of the section points out, we think, the purpose of the statute, in making the mayor responsible "for the proper conduct of the officers of the several departments appointed by him," and he may remove them.

He appoints the city engineer and may remove him.  He does not appoint his assistant or deputy.  It follows that, as relates to an inherent right of removal, he is without authority; and that, under the terms of the statute, it could be his only power; it not being, in our view, expressly delegated.

But counsel for plaintiff contends that the statutes of 1896 must be construed together, and as all future employees were to be appointed under civil service, it was considered unfair to take from the chief the absolute power of employment and discharge of his head deputy. And that, as the new law limited the power of removal, under the maxim *inclusio unius est exclusio alterius,* the inclusion of the right to appoint one special clerk or deputy and discharge him at pleasure, was an exclusion of the right to remove plaintiff, who was not the special clerk or deputy.

In our judgment, the maxim cited does not apply, for the reason that there was a right of removal lodged somewhere, being one of the incidental rights of a corporation.  Before the civil service was organized, this power was vested in the one who had the right to appoint, and the right of removal was not limited to the chief deputy. It ceased to be thus delegated when the civil service commission became the controlling authority.

## IV.

This brings us to the conclusion that the city engineer had the power to appoint his deputies, and that until the power was lodged elsewhere, he had the right to remove them.  When the officer is a deputy (employed by his principal) whose tenure of office was not fixed, in the absence of any statutory prohibition, the power to remove him was incidental to the power of appointment.

We have found several decisions bearing upon the power of removal.

In People vs. Mayor and City of Brooklyn, 43 N. E., the court said: "It is a well established rule of law that a power to appoint to an office or position, where the term or tenure is not defined by statute or otherwise, necessarily carries with it the power of removal."  Citing People vs. Board of Fire Commissioners, 73 N. Y., 437; People vs. Robert, 126 N. Y., 180, and 27 N. E., 267.

There is no claim in the case before us for decision that plaintiff's

tenure was in any way defined. He was, as we take it, employed by the month, at a stated salary per month.

In another case in another jurisdiction, the court held: "Where the tenure is not fixed by law, the office is held at the pleasure of the authority making the appointment." Collins vs. Texas, 36th Texas, 546.

"In the absence of a prohibitory statute regulating the power of removal, it was decided that the power of removal was incidental to the power of appointment." 7th Am. Rep., 686.

"This power of removal cannot be divested or taken away, except by the term of the statute." People vs. Hill, 7th California, 102, and affirmed in Smith vs. Brown, 59 California.

The Supreme Court of the United States in a leading case held: "All offices, the tenure of which is not fixed by the Constitution or limited by law, must be held either during good behavior, or (which is the same thing in contemplation of law) during the life of the incumbent, or must be held at the will and discretion of some department of the government subject to removal at pleasure." It cannot for a moment be admitted that it was the intention of the Constitution that those offices which are denominated "inferior offices" should be held during life; and if removable at pleasure, by whom is such removal to be made?

"In the absence of all constitutional provision or statutory regulation, it would seem a sound and necessary rule to consider the power of removal an incident to the power of appointment." *In re* Hennen, 13 Pet., 230, 250.

This, we understand, is the jurisprudence of the National Court regarding the removal of "subordinate officers."

Here, there is no necessity of recognizing the principle further than as applying to a deputy who has been discharged by an officer by whom he had been employed. In our judgment, the jurisprudence of this State, as heretofore announced, is not adverse to the views before expressed as applying to deputies holding under their principal, the officer in charge of the office in which they are deputies.

To this point of the case we were decidedly inclined to the opinion, that, as relates to the merits, plaintiff was the appointee of the city surveyor, and entertained no doubt, that the term or tenure of the office not being fixed, the appointing power had, as an incident, the power to remove his appointee.

Granted that this position is not entirely and absolutely conclusive

in all respects, the legality of plaintiff's claim to the office he claims, to say the least, is not free from some doubt.

In this respect, we are impressed by the views of the judge of the District Court, directing attention to the existing charter, wherein it appears that an officer or employee must have been examined by the board of civil service in order to be brought within the provision of the statute regarding its power of removal of an officer or employee.

We insert in *extenso* the view of the judge of the District Court, given by him in support of his decree:

"On the trial, it was conceded that the civil service commission organized March 19th, 1897, and promulgated its rules, as required by the charter, on April 1, 1897, and, the rules show, that the office of assistant city surveyor and engineer has been placed in the classified list.

"Plaintiff's appointment by the city engineer, antedates the adoption of said rules, by several months. There is no allegation or proof that he has been examined by the said board, and whether, or not, he is an appointee, under said rules, *i. e.*, after examination, as was intended perhaps, by the terms of the charter, when he was appointed; and whether or not it is required that he should be examined, and whether or not he is recognized by said board as on the civil service list, are all open questions of law, to some extent, and also questions of fact, of services, in part bearing on his title to the office in question, and placing it in more or less doubt.

"Unless the title to the office, and his consequent right to remain in the discharge of his duties, are *absolute* and *apparent*, on the mere statement of the case, it seems well settled, that a preliminary injunction ought not to issue in such a case. This is true of all kindred matters; the right to a public office included. See McComb vs. Ernest, 1 Woods, 196; 21st Ann., 18; 32nd Ann., 649; 47th Ann., 53; 61 and 65. (Italics ours.)  *  *  *

"The case alleged by the plaintiff does not bring it within any of the categories provided by our Code, where the writ issues as a matter of right, and, therefore, it rests in the discretion of the court to decide whether the act sought to be enjoined will, if carried out, pending any contest on the issue of title, operate to the irreparable injury and wrong of the plaintiff.

"In this case, the office in question has been placed in the civil service, as classified. If under the rules, plaintiff has been placed in

said office, the right of the city engineer to remove him may well be questioned. At least he would have to prefer charges, and it seems, that the civil service board and not a judicial court would decide the issue.

"If this be not the case, on the facts, it may be, that, under the intrusion into office act, or, by *quo warranto,* or some kindred proceeding, the issue of title may be settled by a court having jurisdiction."

The learned judge further said that as plaintiff had not taken any proceeding against defendant and the city to test plaintiff's right to the office, he had declined to issue the injunction. It was, he thought, a matter within his jurisdiction. The office, as classified, had been placed within the civil service. If, under its rule, plaintiff had been placed in the office he claimed, the right of the city engineer to remove him may well be questioned. If he was in the civil service, the issue was one to be decided by the civil service board, and not by the courts. If his case is not within the civil service, it may be that, under the intrusion into office statute, or by *quo warranto* or other similar proceedings, the issue of title may be settled by the courts.

He felt that he should hesitate to issue an injunction, and thereby bring confusion and discord in an important branch of the public service. He took the charter as his guide, and applying to the allegations of plaintiff's petition the tests and rule laid down in State *ex rel.* Kuhlman vs. Rost, 47th Ann., 53; State *ex rel.* Keller vs. Rost, 47th Ann., 61, and State *ex rel.* Picard vs. Rost, 47th Ann., 65, he felt that he exercised a sound discretion and promoted the general good and orderly administration of justice, by refusing the injunction, so long as the right which plaintiff claimed is a matter not determinable in this suit as against the city and the defendant. The judgment reserved to plaintiff whatever right he might have.

We think that these grounds sustained the decree of the District Court, and that they and the judgment should be affirmed. They are affirmed.

MONROE, J., takes no part, as he was not a member of this court when the case was submitted.