The plaintiff, Percy J. Alleman, claiming that he is the duly appointed and qualified member of the School Board of St. Charles Parish, for Ward 3, and that he is in possession of that office, filed this suit in the Twenty Fourth Judicial District Court for the Parish of St. Charles to obtain an injunction against the defendant, Harry A. Dufresne, who, he claims, is contesting his right to the office and is interfering with his possession thereof. It is alleged in plaintiff's petition that, on November 3rd 1942, one Flavin Keller was duly elected as member of the St. Charles Parish School Board, for Ward 3, for a full six-year term and that he qualified for said office in the manner required by law; that Keller died on December 21st 1942 and that thereby a vacancy was created in said office; that, on December 29th 1942, the Governor filled the vacancy then existing by appointing plaintiff to the office; that plaintiff was and is possessed of all of the qualifications prescribed by law for membership on the School Board and that he qualified for said office on January 4th 1943 by taking the oath of office and by filing same with the Secretary of State and the Clerk of Court for the Parish of St. Charles, as required by law; that, at a regular meeting of the St. Charles Parish School Board held on January 5th 1943 at 10 o'clock a.m., plaintiff's commission as member of the School Board was recognized by said Board; that he took his seat as a duly qualified member of the Board and engaged in the business transacted at the meeting; that, notwithstanding this, plaintiff is informed that, after he had received his commission and had qualified for the office, the Governor undertook to revoke and rescind the commission issued to him and to appoint the defendant, Harry A. Dufresne, in his place and stead; that said pretended rescission and revocation of plaintiff's commission is illegal, null and void; that the defendant has attempted to qualify and act under the void commission issued him as a member of the School Board and that, because of this, a writ of injunction is necessary to protect plaintiff in the legal possession and enjoyment of the office. Plaintiff accordingly prayed for the issuance of a temporary restraining order and a rule nisi, ordering the defendant to show cause why a preliminary injunction should not be granted.
The temporary restraining order was refused by the district judge but he issued an order for the defendant to show cause why the injunction prayed for by plaintiff should not be granted. Defendant appeared on the appointed day and filed his return, together with a plea to the jurisdiction of the court and exceptions of vagueness and no right or cause of action. The district judge, on consideration of the exceptions in advance of the trial, overruled the plea to the jurisdiction but, believing that the exceptions of vagueness and no right or cause of action were well founded, sustained them and dismissed plaintiff's suit. The theory upon which the exception of no right or cause of action was maintained was that plaintiff had not legally qualified for the office of member of the St. Charles Parish School Board because the qualifying oath, which he had taken, was administered by a notary public instead of by the Governor, any judge, justice of the peace or clerk, as indicated by Revised Statutes, Section 2550, Dart's General Statutes, section 7726. Upon the rendition of this judgment of dismissal of his suit, plaintiff applied to the Supreme Court for writs of mandamus, certiorari and prohibition. The writs were granted and subsequently, on April 12th 1943, they were made peremptory, the Supreme Court being of the opinion that, since the adoption of Act No. 7 of 1877, the notaries public of the state were vested with the right to administer oaths of office to all public officials. The case was accordingly remanded to the district court for further proceedings. See Alleman v. Dufresne,203 La. 79, 13 So.2d 468.
When the case reached the district court after the remand, the matter was then considered on the issues presented by plaintiff's petition and the return of the defendant. In his return to the rule nisi, defendant contended that plaintiff has not the legal appointee of the Governor, and denied that he had ever been in possession of the office in controversy. He further set forth that, *Page 72 
whereas the plaintiff had been issued a commission by the Governor to fill the vacancy caused by the death of Flavin Keller, the Governor had rescinded and revoked the appointment prior to the time plaintiff had qualified for the office; that thereupon, on January 4th 1943, the Governor had appointed him (defendant) to the office and issued a commission to him as evidence thereof; that he, and not the plaintiff, had fully qualified for said office by taking the prescribed oath and filing the same with the Secretary of State and Clerk of Court; that, thereafter, at a regular meeting of the St. Charles Parish School Board held on January 5th 1943 at 11 o'clock a.m., he had been recognized by the School Board as the duly qualified appointee of the Governor, entitled as such to the possession of that office, and that he has been in such possession and has been performing the duties of the office ever since. And, alleging that plaintiff was interfering with his peaceable possession of the office by making unwarranted claims under the void commission which had been revoked, defendant pleaded, by way of reconvention, that he was entitled to an injunction against the plaintiff to protect his rights in the premises.
After hearing evidence on the foregoing issues, the district judge rejected plaintiff's demand and granted a preliminary injunction in favor of the defendant on the reconventional demand, prohibiting and restraining plaintiff from interfering with the defendant in his possession of the office in controversy. The plaintiff has obtained a suspensive appeal to this court from the adverse decision.
It is clear, from the pleadings in this case, that the real issue in contest is whether the plaintiff or the defendant is the legal appointee to the office of member of the St. Charles Parish School Board for Ward 3. However, plaintiff has not seen fit to test this question by filing a quo warranto proceeding but he sought to have his right to the office determined in a summary equitable proceeding, having for its object the issuance of an injunction against the defendant from interfering with his possession on the theory that he is the incumbent and is performing the duties of the office. It has long been established that the remedy of injunction is available to an officer in possession to prevent one who is making claim to the office from interfering with the complainant's possession until such time as the matter can be passed upon by the courts in an intrusion into office suit and it has been generally recognized in those cases that the complainant is not required to show that he is a de jure officer but merely that he is in possession as a de facto officer, under some color of title which may or may not be paramount to the person sought to be enjoined. See Guillotte v. Poincy, 41 La.Ann. 333, 6 So. 507, 5 L.R.A. 403; Goldman v. Gillespie, 43 La.Ann. 83, 8 So. 880; Wheeler v. Board of Fire Commissioners, 46 La.Ann. 731, 15 So. 179; State ex rel. Kuhlman v. Rost, Judge, 47 La.Ann. 53, 16 So. 776; State ex rel. Keller v. Rost, Judge, 47 La.Ann. 61, 16 So. 663; Peters v. Bell, 51 La.Ann. 1621, 26 So. 442; Sanders v. Emmer, 115 La. 590, 39 So. 631; Jackson v. Powell, 119 La. 882, 44 So. 689; Gleason v. Wisdom, 120 La. 632, 45 So. 530; State ex rel. Bourg v. Turner,152 La. 828, 94 So. 411; State ex rel. Ferry v. Buchler,166 La. 743, 117 So. 814 and State ex rel. Porterie, Attorney General, v. Smith, 182 La. 662, 162 So. 413.
While the foregoing cases are authority for the proposition that, in matters of this sort, title to the office is not an element of the controversy and cannot be adjudicated, the Supreme Court has but very recently modified these rulings in Guillory v. Jones, 197 La. 165, 1 So.2d 65. There the court, after a full consideration of the prior jurisprudence, held that there was no valid reason, in view of the prevailing practice in Louisiana where the judges are vested with the broad power of administering law and equity in the same proceeding, why title to the office cannot be determined in an injunction suit where the defendant asserts that plaintiff is without right or title to the office and that he, the defendant, is the duly qualified officer and entitled to be recognized as such.
Hence, in view of the Supreme Court's latest expression, it is our duty to consider the title claims of the contestants in determining the result to be reached in the instant matter. However, since plaintiff's suit is one for an injunction which is predicated on the charge that he is in possession of the office, we cannot, under the authorities, give him the relief he seeks unless he has proved (1) possession (2) interference by the defendant and (3) a valid title (since defendant claims that plaintiff's title is void and that he is the legal appointee). Likewise, with respect to defendant's *Page 73 
reconventional demand, he is not entitled to the injunction granted him below unless he has established that he is in possession of the office and that he is the legal appointee of the Governor. With these principles in mind, we consider the evidence submitted by the parties to substantiate their respective demands.
It is conceded by the litigants that the vacancy to the office of member of the School Board of St. Charles Parish, Ward 3, was created by the death of Flavin Keller and that the Governor had full power and authority, under section 17 of Act No. 100 of 1922, to fill the vacancy for the unexpired portion of Keller's term of office, by appointment of any person qualified by law to discharge the duties of the office. In conformity with the authority given him, the Governor, on December 29th 1942, appointed plaintiff to the office and caused a commission to be delivered to him. It is also not disputed that plaintiff was legally qualified, by reason of his residence, age and ownership of property assessed for more than $500, to hold the office under the appointment.
On January 4th 1943 at 9 a.m., plaintiff took the oath of office, required by Article 19, section 1 of the Constitution, before a notary public, and, in accordance with Revised Statutes, section 2550, Dart's General Statutes, section 7726, he mailed the oath to the Secretary of State for recordation and also attempted to record it in the office of the Clerk of Court of St. Charles Parish.
A few hours after plaintiff took his oath of office, but before the oath had been delivered to the Secretary of State and the Clerk of Court of St. Charles Parish for recordation, the Governor issued an executive order rescinding and cancelling the appointment of plaintiff and, simultaneously, appointed the defendant to fill the vacancy caused by Flavin Keller's death. A commission to this effect was issued to the defendant, who, like plaintiff, is fully qualified to hold the office. As soon as defendant received his commission (which was apparently delivered on the morning of January 5th 1943), he took the required oath of office before the Clerk of Court, recorded it with him and also delivered a copy of it to the Secretary of State for recordation.
The Secretary of State, having received the oath of plaintiff as well as that of defendant for recordation, was undecided as to which one of the two appointments were valid and he therefore requested an opinion from the Attorney General. On January 7th 1943, the Attorney General, in a letter to the Secretary of State, expressed the opinion that the Governor's right to appoint to office implied the right to rescind such appointment, especially before the appointee had fully qualified for the office by taking the prescribed oath and filing the same with the Secretary of State. And he ruled that, since the appointment of the plaintiff had been cancelled before his oath of office had been filed, the Secretary of State should record the oath of the defendant, the second appointee, and not that of the plaintiff. As authority for this opinion, the Attorney General cited the Report and Opinions of Attorney General, 1932-1934, pages 298-300 and State ex rel. Wimberly v. Barham, 173 La. 488, 137 So. 862.
There is considerable conflict in the evidence as to whether plaintiff or defendant has acquired possession of the office in contest. Plaintiff claims (and this is the basis of his suit for an injunction) that, at the regular meeting of the School Board held on January 5th 1943, he presented his credentials as the appointee of the Governor, was recognized and went into possession of the office. On the other hand, defendant maintains that he, and not the plaintiff, was recognized as the appointee of the Governor at the regular meeting of the School Board held on the same day. The evidence on this question discloses that there were two meetings held on January 5th, one at 10 o'clock, at which plaintiff claims he entered possession of the office, and another at 11 o'clock, which defendant says was the legal meeting at which he acquired possession. In these circumstances, we are required to determine which one of these meetings was the regular legal meeting of the Board.
The record shows that there are five members of the St. Charles Parish School Board. Prior to the death of Flavin Keller, who was the President of the Board, these members were Flavin Keller, Stanley F. Keller, P.N. Schexnaydre, R.J. Vial and another person whose name is not disclosed by the record. At the congressional election held on November 3rd 1942, Landry M. Dufresne was duly elected as the fifth member of the Board for a six-year term, beginning on January 1st 1943 and, on December 15th 1942, the Governor issued to *Page 74 
him a commission to this office. However, Landry M. Dufresne did not acquire possession of the office until January 5th 1943, when he was inducted at the regular Board meeting held on that day.
Flavin Keller, as we have heretofore said, died on December 21st 1942 — so that, at the time of the meeting of the Board held on January 5th 1943, there were only three members of the Board, who were in possession as members in office, to wit, Stanley Keller, Schexnaydre and Vial. The Secretary of the Board, who was also Superintendent of Education for the Parish, was J.B. Martin. He sent out the call for the first meeting for the year 1943 to be held at the office of the School Board on January 5th at 10 a.m. At that hour, R.J. Vial, Schexnaydre (incumbents in office), Landry M. Dufresne and the plaintiff appeared; Stanley Keller being late. Prior to Mr. Keller's arrival, Vial requested Martin, as Secretary of the Board, to take the minutes of the meeting and, upon Martin's refusal to do so on the ground that Stanley Keller, Vice President of the Board, was the proper person to call the meeting to order, Vial attempted to open the meeting and swore in the plaintiff, Alleman, as temporary secretary of the Board. At this point, it appears that Schexnaydre walked out of the meeting. Thereupon, Vial convened the supposed meeting and accepted the commissions of Landry M. Dufresne and the plaintiff, Alleman. At 11 a.m., or shortly after the adjournment of the alleged meeting at which the plaintiff's credentials were accepted, Stanley Keller appeared and, as Vice President of the Board, convened another Board meeting. There were present at this meeting Keller, Schexnaydre, Vial, Landry M. Dufresne, plaintiff and the defendant. After the meeting had been called to order, a motion was made and duly seconded that the credentials of Landry M. Dufresne (the newly elected member of the Board) and those of the defendant, Harry A. Dufresne, be presented for acceptance. By a vote of a majority, viz, — Stanley Keller and Schexnaydre with Vial voting blank, Landry M. Dufresne and defendant, Harry A. Dufresne, were recognized as members of the Board and took their seats as such. Thereafter, during the course of the meeting, it was moved that the commission of the plaintiff be accepted and approved. This motion lost, Vial and Landry M. Dufresne voting yea and Keller, Schexnaydre and Harry Dufresne voting nay. It further appears from the minutes of this meeting that the regular business of the School Board was brought up and voted upon and that, at no time, did Vial, who had called the first meeting, protest as to the irregularity of the proceedings or contend that the meeting was illegal.
It seems clear to us, from the facts above related, that the first so-called meeting at which plaintiff claims to have been inducted into office was an absolute nullity. In the first place, the only incumbent of the Board who appeared and participated at this so-called meeting was Vial himself. There were, at that time, three incumbents in office, which number was sufficient to constitute a quorum. This quorum of three members responded to the call of Keller at the meeting which was convened at 11 o'clock a.m. No one objected to these proceedings and defendant was recognized by a majority vote of those present, who were qualified to vote, to be the legal appointee of the Governor and was given possession of the office. Hence, it is patent that plaintiff has failed to prove that he has been recognized by the School Board as a member thereof and that he is in possession of the office. In these circumstances, his suit for an injunction must fail because the jurisprudence is well established (see authorities cited above) that, in order for a claimant to an office to obtain an injunction against another because of interference or adverse claims by the latter, possession of the office by the complainant is a necessary and fundamental requisite to the maintenance of the suit. Hence, we are of the opinion that the district judge was correct in refusing to grant plaintiff the preliminary injunction prayed for.
Disposal of this part of the case leaves only for consideration the correctness of the judge's decision in granting to the defendant, Dufresne, a preliminary injunction against plaintiff on the reconventional demand. Since the evidence establishes to our satisfaction that the defendant has been recognized by the School Board as a member thereof and has thereby acquired possession of that office, he would, under the decisions of the Supreme Court prior to Guillory v. Jones, supra, be entitled to an injunction against the plaintiff, pending the filing by plaintiff of an intrusion into office suit, because he has a color of title to the office, i.e., a commission from the Governor and is, therefore, at least a de *Page 75 
facto officer. But in view of the holding in Guillory v. Jones, it is clear that, since plaintiff questions the validity of defendant's title and claims that his title to the office is paramount, it was incumbent upon the defendant, in order to be entitled to the relief granted him by the trial judge, to show that he is a de jure officer, — that is, that the title held by him is valid. In other words, title to the office is squarely at issue and, while disposal of this point in plaintiff's favor will not ipso facto oust the possessor from the office since the suit is not a quo warranto proceeding, the effect of the judgment will be to settle the dispute.
When we come to investigate the question of the legality of the titles of the contestants, the conclusion to be reached depends upon whether the Governor had the right to rescind and cancel the commission issued to plaintiff prior to the time plaintiff had accepted the office by taking the prescribed oath and recording it with the officers designated by Revised Statutes, section 2550, Dart's General Statutes, section 7726. Plaintiff says that he had qualified because he had taken the oath of office before the Governor rescinded the appointment. But we do not believe that it makes any difference whether the plaintiff took the oath of office before or after the Governor cancelled his appointment. The question is a much broader one which addresses itself to the right of the Governor to rescind an appointment to an office before the appointee, who is not disqualified by law from holding the position, has accepted the appointment by performing the acts required of him by law. In other words, after everything required of the Governor is complete, by the naming the appointee and the issuance of the commission, does he lose jurisdiction over the matter?
The authorities on this question are unanimous to the effect that, once the Governor has made his selection by appointing a person of his choice, he is without power, in cases where he has no right to remove the officer at his will, to revoke, cancel or rescind his act notwithstanding the fact that the appointee has not accepted the appointment or has not qualified by taking the steps necessary to entitle him to the office. This was determined by the Supreme Court of the United States in the famous case of Marbury v. Madison, 1 Cranch 137, 162, 2 L.Ed. 60. In that matter, the applicants filed a rule on James Madison, Secretary of State, to show cause why a mandamus should not issue commanding him to cause to be delivered to them commissions as Justices of the Peace of the District of Columbia. It appeared that President Adams nominated the applicants to be appointed Justices of the Peace of the District of Columbia and had sent their names to the Senate for its advice and consent; that the Senate had approved the nominations; that commissions in due form had been signed by the President and that applicants had requested Mr. Madison, Secretary of State, to deliver commissions to them which he refused to do. The court undertook to discuss the question of whether or not the President would have had the right to rescind or revoke the commissions. On this point it observed:
"It is therefore decidedly the opinion of the court, that when a commission has been signed by the President, the appointment is made; and that the commission is complete, when the seal of the United States has been affixed to it by the secretary of state.
"Where an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern; because the act is at any time revocable; and the commission may be arrested, if still in the office. But when theofficer is not removable at the will of the executive, theappointment is not revocable, and cannot be annulled. It hasconferred legal rights which cannot be resumed. The discretion ofthe executive is to be exercised, until the appointment has beenmade. But having once made the appointment, his power over theoffice is terminated in all cases, where, by law, the officer isnot removable by him. The right to the office is then in theperson appointed, and he has the absolute, unconditional, powerof accepting or rejecting it." (Italics ours.)
To the same effect see United States v. Le Baron, 19 How. 73, 78, 15 L.Ed. 525.
In 42 American Jurisprudence, section 104, page 959, under the title "Public Officers", the general rule with respect to the right of the appointive power to revoke or cancel an appointment is stated thus:
"However reasonable and consonant with public policy it would seem to be to allow an appointive power to reconsider its action in making an appointment to a public office, there must nevertheless be some point of time at which such appointment should be *Page 76 
deemed final and irrevocably fixed. There are of course circumstances under which an appointment to office may be reconsidered and revoked, but as a general rule an appointment is not subject to reconsideration after it is complete and the appointee becomes entitled to the office."
In section 105, page 960 of the same volume, referring to appointments by a single officer, it is said:
"In the case of an appointment made by a single executive, it is undisputed that the appointment once made and completed is irrevocable, whether that executive is the President, a governor, a mayor or other officer."
See also 46 Corpus Juris, section 69, page 954.
In a comprehensive note contained in 89 A.L.R. beginning at page 132 with respect to reconsideration by the appointive power of an appointment to office, it is stated on page 138 that:
"In the case of appointments made by a single executive, such as a governor, mayor, etc., it is undisputed that the appointment once made is irrevocable."
As authority for this proposition, cases of the Supreme Court of the United States (beginning with Marbury v. Madison) are cited, together with pronouncements of the highest courts of Alabama, California, Illinois, Kansas, Kentucky, Michigan, Ohio, Pennsylvania and Texas.
The only class of cases, wherein it has been held that the appointive power may reconsider and rescind an appointment once made, are matters in which the appointive power has been a public board or council which, by statute or familiar rules of parliamentary procedure, has a right to reconsider its vote after it has been cast. Of course, another exception exists where the appointee is removable at the will of the appointive power. In such cases, it is said that, inasmuch as the appointive power has the right to remove the officer at his pleasure, this right necessarily includes the power to rescind or cancel the appointment prior to the time the appointee has accepted the office.
However, the exceptions above noted are not applicable to the case at bar. The Governor, under section 17 of Act No. 100 of 1922, is vested with the right of filling all vacancies in the membership of Parish School Boards caused by death, resignation or otherwise. He has no power to create a vacancy. Once the appointment is made the function of the Governor is complete; his power has been fully exercised; his authority ceases and the right of accepting by qualifying for the office is a matter solely within the control of the appointee. The only way that his authority can again come into being is in case the appointee is disqualified from holding the office or fails to qualify for it in the time prescribed by law. In such event, the office becomes vacant and the Governor may fill such vacancy.
The Constitution ordains that the officer appointed must qualify by taking an oath of office and, by section 1 of Act No. 19 of 1878, it is provided that all state, district and parochial officers, whether elected or appointed, shall be required, within thirty days after the receipt of their commissions, to take the oath of office and give bond, where bond is required, and cause the same to be filed in the proper office in the manner as prescribed by law.
Under section 2550 of the Revised Statutes, Dart's General Statutes, section 7726, all oaths of office are required to be deposited in the office of the Secretary of State and those of all parish officers shall also be recorded in the Clerk's office of the Parish where the oath is administered. And section 2 of Act No. 19 of 1878 provides that the failure of any officer to comply with section 1 of the Act (that is the taking of the oath and the filing of same within thirty days from the receipt of their commissions) "shall operate a vacation of such office, and the Governor shall proceed to fill said office by appointment, as in other cases of vacancy."
Applying the foregoing statutes to the case at bar, it will be seen that, from the date the plaintiff received the commission issued him by the Governor, he had thirty days within which to qualify for the office by taking his oath and filing it in the office of the Secretary of State and the Clerk of Court for the Parish of St. Charles. This he has done. Therefore, since the appointment of the Governor was completed when he issued the commission and since plaintiff has qualified for the office within the time prescribed by law, the Governor was without power or authority to rescind his appointment and the second commission issued by him to the defendant is an absolute nullity. *Page 77 
The opinion of the Attorney General given to the Secretary of State on January 7th 1943, in which he rules that the Governor had the right to rescind plaintiff's appointment, is based on previous opinions of the Attorney General rendered in 1933 and the case of State ex rel. Wimberly v. Barham, 173 La. 488,137 So. 862. These authorities are relied upon by counsel for the defendant and, in addition, counsel cites the case of State ex rel. Keller v. Rost, Judge, supra.
In the opinion issued by the Attorney General, of date January 11th 1933, it was ruled that a commission issued by the Governor to one Bolin, as member of the School Board of Webster Parish, could be revoked since Bolin was disqualified from holding the office by reason of the fact that he did not own property valued at the sum of $500. We quite agree with this ruling but it is obviously without pertinence to the instant case.
In the Barham case, the Governor appointed three members to the School Board for Morehouse Parish, taking the position that there were three vacancies on the Board as the three elected officials were disqualified because of dual office holding. The Supreme Court held that this view was correct because the three incumbents had accepted appointments as United States Postmasters. The only issue there, with regard to the Governor's right to cancel appointments made by him, resulted from a plea in abatement filed by the defendants, in which it was charged that the Governor had cancelled and revoked the commissions issued to the plaintiffs after they had instituted the suit. The court found, as a fact, that the commissions had never been cancelled or rescinded and it was stated that, under those circumstances, it was unnecessary to determine whether the Governor had the right to cancel them. Obviously, the case has no application here.
In State ex rel. Keller v. Rost, Judge, supra, one Cambre, claiming that he had been appointed by the St. Charles Parish Police Jury as one of the supervisors of election for the parish, obtained an injunction in the lower court on ex parte affidavits that he was the incumbent in the office and that Keller, the defendant, was interfering with him in the performance of his duties. Keller applied to the Supreme Court for writs of prohibition, mandamus and certiorari against the district judge. The writs were granted. The court found that the facts of the case revealed that Cambre had been appointed at a meeting of the Police Jury but that, at the same meeting, his appointment was revoked by the Jury and Keller appointed in his place and that Keller had been recognized by the Board of Elections as one of its members and was actually in possession of the office. It was held that, since Cambre was not in possession of the office, he was not entitled to the injunction he had obtained in the lower court. This case is authority only for the proposition that, in order for an officer to obtain an injunction against a rival claimant from interfering with him, it is necessary that he show that he is the possessor of the office. The court, in the Keller case, did not consider the question of the validity of Keller's title at all and, hence, the case cannot be regarded as authority for the proposition that the Police Jury had the right, after it had once appointed Cambre, to revoke the appointment and appoint Keller in his place.
For the reasons assigned, the judgment appealed from, insofar as it dismisses plaintiff's suit, is affirmed; but the judgment granting to the defendant, Harry A. Dufresne, an injunction against Percy J. Alleman on the reconventional demand is annulled, avoided and reversed and it is now ordered that defendant's reconventional demand be dismissed. Defendant is to pay the costs of this appeal; costs of the district court are to be borne by plaintiff.
Affirmed in part. Reversed in part.
JANVIER, J., absent. *Page 271